388 So.2d 438 (1980)
Mae McWilliams WILLIAMS, Plaintiff-Appellee,
v.
BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, Defendant-Appellant.
No. 14207.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1980.
Rehearing Denied September 29, 1980.
*439 William J. Guste, Jr., Atty. Gen., Carmack M. Blackmon, Asst. Atty. Gen. by Charles E. Welsh, Asst. Atty. Gen., Shreveport, for defendant-appellant.
Skeels, Baker, Coleman & Strickland by Charles W. Strickland, Shreveport, for plaintiff-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, JJ.
En Banc. Rehearing Denied September 29, 1980.
FRED W. JONES, Judge.
In June 1979 the Louisiana State University Medical Center School of Medicine in Shreveport, Louisiana ("Medical Center") advertised for bids on various items of hospital room equipment, including 177 hospital beds. The bids submitted were opened on July 11, 1979 and on July 17, 1979 a purchase order was issued by the Medical Center to Luffey's Medical & Surgical Supply, Inc. ("Luffey") for the 177 hospital beds.
The owners of Williams' Physicians & Surgeons Supplies ("Williams"), another bidder on the hospital beds, filed this suit on September 24, 1979 against The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, asking for a preliminary injunction to enjoin the execution of the contract between the defendant and Luffey for purchase of the hospital beds, for annulment of the awarding of the contract and for damages.
After a hearing on the rule for a preliminary injunction, judgment was rendered in favor of Williams enjoining execution by defendant of the contract with Luffey. Defendant perfected a suspensive appeal from this judgment, urging that the trial judge erred in the following respects:
(1) Finding that the bid submitted by plaintiff conformed to the specifications.
(2) Finding that the bid submitted by Luffey was ambiguous.
(3) Holding that plaintiff's bid was arbitrarily rejected.
According to the record the Medical Center's invitation for bids on the hospital beds listed five brand name beds, with serial numbers, as beds deemed to be acceptable based upon past experience of Medical Center personnel. In addition, the invitation set forth in detail a description of an acceptable bed, including essential equipment and features. The following clause was contained in the body of the detailed description:
"Bed shall be equipped with five inch Rhombus or Tente solid stem casters, two with positive locking mechanisms or tread breaks. Two locking casters to have stem lock."
The purpose of furnishing the detailed description was to give prospective bidders an opportunity to submit bids on beds which were equivalent to the five listed and to specify additional equipment that might not be a part of the enumerated basic beds.
In its bid on the 177 hospital beds Williams inserted in the space provided on the bid form the InterRoyal bed which was listed as one of the five acceptable beds, quoting a unit price of $772.53 each. Also inserted in the described space was an alternate bid describing an InterRoyal bed which was not one of the five listed as acceptable.
The bids for the hospital room equipment were opened on July 11, 1979 by Richard H. Chandler, the Medical Center's Director of *440 Purchasing. Since Williams' bid on the hospital beds did not mention casters, Chandler testified that he immediately checked the InterRoyal catalog and found that this particular brand bed was equipped with standard casters rather than the Rhombus or Tente casters specified in the bid invitation. To verify this information, Chandler queried O. E. Moncrief, Williams' contract department manager, concerning the type of casters on the InterRoyal bed. Moncrief replied that he did not know and would have to check with the manufacturer in New York. The following morning Chandler was informed by Jim Cotton, Williams' general manager, that the bed for which the bid was submitted came equipped with Tente casters. However, because the bid did not specifically list either Rhombus or Tente casters as equipment on the Inter-Royal beds, Chandler decided to reject the Williams bid as not conforming to specifications set forth in the bid invitation.
In connection with its bid on the 177 hospital beds, Luffey submitted a primary bid listing a Joerns bed with five inch casters, for a unit price of $771.32 each. In addition Luffey submitted three alternate bids on Joerns beds. Neither the bed described in the primary bid nor those in the alternate bids were on the list of five acceptable beds.
Chandler testified that the only Luffey bid conforming to specifications was an alternate quoting a unit price of $822.20 for each bed and described as follows:
Joerns # VA660BA bed as specified (emphasis added) with 5" Rhombus caster two positive locking casters, one with stem lock with full length or half length rails.
After a telephone conversation with a Luffey representative, Chandler was satisfied that this Joerns bed did in fact come with two stem locks as required by the bid specifications. Since this was deemed to be the lowest bid conforming to specifications, a purchase order for the 177 hospital beds was transmitted to Luffey.
In his written reasons for judgment on the rule for a preliminary injunction, the trial judge concluded that "the Williams' bid was in conformity with the specifications as spelled out in page 3 of the invitation bid and acceptance form, whereas, the Luffey bid is somewhat ambiguous," and held that the bid was arbitrarily awarded to Luffey.
Appellant argues that the trial court was in error because it is impossible to ascertain from the face of the Williams bid document that the specified InterRoyal bed came equipped with either Rhombus or Tente casters as required by the bid invitation. It further contends that to allow a bidder to explain or clarify his bid after the sealed bids have been publicly opened would amount to negotiation which is proscribed by the public bid laws of this state.
On the other hand, appellee asserts that it had been led to believe, based upon its experience of submitting bids to the Medical Center for some eight years, that the simple listing of an acceptable brand-named item indicated an intention to conform to specifications unless the bidder affirmatively signified a deviation. In support of this position appellee pointed out that in its bid on items other than the hospital beds (Joint Exhibit # 2), certain specifications were marked through in order to indicate nonconformity with those requirements.
The basic statutory law of this state governing public bidding is contained in La.R.S. 38:2212[1] which stipulates that all public work exceeding a specified sum must be advertised and let by contract to the lowest responsible bidder whose bid conforms to the advertised specifications.
*441 This statute is an expression of and predicated upon public policy formulated to protect the taxpaying citizen against contracts of public officials entered into because of favoritism and possibly involving exorbitant and extortionate prices. Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949); Boxwell v. Dept. of Highways, 203 La. 760, 14 So.2d 627 (1943).
Our jurisprudence has interpreted similar statutory provisions as vesting in the awarding authority the power and discretion to determine the responsibility of the bidder and to reject all bids if none is satisfactory, but as not permitting the arbitrary selection of a higher bid and the rejection of lower bids. St. Landry Lumber Co. v. Mayor and Board, 155 La. 891, 99 So. 687 (1924).
The awarding agency has the right to be wrong in the exercise of its discretion, but not the right to be "unfairly, arbitrarily wrong." Tide Equipment Co. v. Pointe Coupee Parish Police Jury, 312 So.2d 154 (La.App. 1st Cir. 1975); Toye Bros. Yellow Cab Co. v. City of New Orleans, 264 So.2d 768 (La.App. 4th Cir. 1972).
In Haughton Elevator Division v. State Division of Administration, 367 So.2d 1161 (La.1979), the State had disqualified Haughton, the lowest bidder on elevator maintenance contracts, as not being a "responsible" bidder under the public bid laws. The Louisiana Supreme Court reversed the lower courts' decisions which denied injunctive relief and held that the lowest responsible bidder (conforming to the specifications) has a right to receive the advertised contract if any is let and such right is entitled to the protection of procedural due process.
Consideration of the cited statutory law and jurisprudence leads to the conclusion that the sole issue presented on this appeal is: did the Medical Center act arbitrarily in rejecting the Williams bid because it did not list the special casters described in the bid invitation?
Preliminary to answering this question, it should be pointed out that, unlike Haughton which involved the disqualification of a bidder as not responsible, we are dealing with a disqualification for not bidding according to advertised specifications. Since all of the information needed by the awarding authority in our case is contained in the bid, the elaborate procedural requirements enunciated in Haughton are inapplicable. We recognize, as dictated by Haughton, that the lowest responsible bidder, bidding in conformity to specifications, does have a statutory entitlement entailing due process requirements. However, under our particular factual situation due process simply requires that the awarding authority, after a careful consideration of the written bid, act in a manner that is not arbitrary.
Next, we emphasize the practical importance of a bid conforming on its face to the advertised specifications. To require any less would constitute an open invitation to the kind of impropriety and abuse the public bid laws were designed to prevent.
In this case the advertised specifications required that the 177 hospital beds be equipped with either Rhombus or Tente casters. Williams' bid simply quoted a price on an InterRoyal bed, one of the five listed as acceptable, without describing the type of caster with which the bed was equipped. Chandler took the logical step of examining the InterRoyal catalog with reference to this particular bed and found that it was equipped with a standard caster rather than one of those required by the specifications.
At this point the Medical Center would have been fully justified in rejecting Williams' bid, without taking further action. After all, immediate acceptance of the bid would have placed the Medical Center in the vulnerable position of uncertainty that it could compel delivery of beds from Williams with Rhombus or Tente casters.
However, out of an abundance of caution and to verify the catalog information, Chandler brought the matter of casters up with the Williams employee who prepared its bid. Interestingly enough, that employee confessed ignorance with reference to the casters and requested an opportunity to check with the manufacturer of the bed. *442 Although the latter subsequently assured Williams that the particular InterRoyal bed would be equipped with Tente casters, it is significant that no one ever contended that that information relating to casters obtained by Chandler from the InterRoyal catalog was erroneous.
There was some evidence that in the past Williams had marked through specifications when bidding on the Medical Center's bid invitations as a method of indicating deviations from the specifications. However, there is no authority for holding that this ex parte practice by the bidder would serve to bind the awarding agency with the presumption that the bid conformed to the specifications unless there was an expressed deviation.
Adverting to the appellee's contention that the Medical Center sought clarification of the Williams and Luffey bids from both parties and then arbitrarily awarded the contract to Luffey, we note only that there was a minor discrepancy in the accepted Luffey bid (relating to a stem lock) which was insignificant in comparison to the critical omission of specified casters in Williams' bid.
In conclusion, we find that the Medical Center, through its Director of Purchasing, acted within its discretion in rejecting the Williams bid on the 177 hospital beds because that bid did not conform to the specifications relating to casters. Even if that decision had been wrong, we find no evidence in the record that the Medical Center arbitrarily rejected the Williams bid and accepted the Luffey bid.
For these reasons, we hold that the trial judge was in error in granting the preliminary injunction, and reverse. The preliminary injunction is set aside and the case is remanded to the trial court for further appropriate proceedings consistent with this opinion.[2] Costs of this appeal are assessed against the appellee.
NOTES
[1] The pertinent part of this statute provides:

"All public work exceeding the sum of ten thousand dollars including both labor and materials and all purchases of materials or supplies exceeding the sum of two thousand five hundred dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part."
[2] There is often no necessity for a trial on the merits after evidence has been presented on the rule for a preliminary injunction. However, unless the parties have agreed otherwise, the case is determined on its merits only after a full trial under ordinary process. See Schwegmann Bros. Giant Super Markets v. La. Milk Commission, 290 So.2d 312 (La.1974).