Robert KASOM, d/b/a Bob's Landscaping Service, Plaintiff,

v.

CITY OF STERLING HEIGHTS, A Michigan Municipal Corporation, Jose Benavides, Bowman K. Chung, Art Madar, Jerry V. Mann, Mary L. Marcinak, Charles S. Marling and Nancy L. Ulrich, Jointly and Severally, Defendants.

Civ. A. No. 82–30071.

United States District Court, E.D. Mich., S.D.

Jan. 25, 1985.

Robert J. Seibert, Mont Clemens, Mich., for plaintiff.

Paul J. O'Reilly, Sterling Heights, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 claiming that the defendants violated his constitutional rights to Due Process and Equal Protection of the law in connection with the awarding of a public contract.[1] Plaintiff has also raised analagous state law claims under the Michigan Constitution. Having granted defendants' motion at trial for an involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b), the Court hereby issues its findings of fact and conclusions of law in accordance with Rule 52(a).

### FINDINGS OF FACT

1) Plaintiff, Bob's Landscaping Service, is a sole proprietorship owned by Robert Kasom and is engaged in the business of residential and commercial landscaping. At all times relevant hereto, plaintiff's principal place of business was located in St. Clair Shores, Michigan.

2) Defendant, City of Sterling Heights, is a Michigan municipal corporation organized pursuant to MCLA § 117.1 *et seq.*

3) The individual defendants Jose Benavides, Bowman K. Chung, Art Mandar, Jerry V. Mann, Mary L. Marcinak, Charles S. Marling, and Nancy L. Ulrich, were, at all times relevant hereto, duly elected members of the Sterling Heights City Council.

4) On February 24, 1982, the City of Sterling Heights published an "invitation to bid" on a noxious weed cutting project in *The Advisor* newspaper. This weed cutting project was to extend for a period of three (3) years.

---

1. In his complaint, plaintiff also included a Privileges and Immunities Clause claim, a claim under 15 U.S.C. § 1 for an antitrust violation, and a 42 U.S.C. § 1985 conspiracy count. These counts have been dismissed by the Court or dropped by the plaintiff.

5) The City's authority to contract for public work projects such as the weed cutting project is set forth in the City of Sterling Heights Charter, section 13.01. Section 13.01 provides that:

"The city may contract for the performance of any public work or may perform the same itself through its departments, officers and employees; provided, however, that it shall not make any public improvements exceeding an estimated five thousand dollars ($5,000.00) until it has first advertised for sealed proposals therefor. The city shall have the right to reject any and all such proposals."

6) In addition to the advertisement published in *The Advisor*, the City of Sterling Heights sent requests to bid to all individuals who were on the City's bid list for such projects, including the plaintiff.

7) *The Advisor* newspaper advertisement read as follows:

" 'INVITATION TO BID'

"The City of Sterling Heights, Michigan, is accepting sealed bids for noxious weed cutting for a period of three (3) years.

"Until Wednesday, March 10, 1982 at 2:00 P.M. in the office of the City Clerk, 40555 Utica Road, Sterling Heights, Michigan 48078.

"Specifications are available in the office of the City Clerk, 40555 Utica Road, Sterling Heights, Michigan 48078."

8) The bid specifications provided to potential bidders specifically reserved the right of the City "to reject any and all bids, to waive any informalities in the bidding and to accept any bid it deems in the best interest of the City." (Plaintiff's Exhibit # 1, page 4, paragraph D).

9) Pursuant to the invitation to bid and notification sent to the individuals on the City's bid list, seven sealed bids were submitted to the Sterling Heights City Clerk. Each of the seven bidders, including the plaintiff, satisfied all requirements set forth in the bid specifications.

10) Plaintiff, Bob's Landscaping Service, submitted a bid of $109,695.00 and that bid represented the lowest bid submitted on the noxious weed cutting project.

11) One of the seven bidders who submitted a bid, W.J. Rogers, Inc., was a resident of the City of Sterling Heights.

12) At a regularly scheduled meeting on April 20, 1982, the Sterling Heights City Council unanimously rejected all bids submitted and ordered the noxious weed cutting project re-bid.

13) One of the few factual disputes in this case centers around the reasons for the City Council's action in this regard. Defendants strenuously argue that the City Council took this action because it was not satisfied that a sufficient number of bids had been submitted to ensure a competitive price. Plaintiff argues that the City Council rejected his bid solely because he was not a resident of Sterling Heights and because the City Council desired to ensure that the contract was awarded to a Sterling Heights company.

14) The Court, however, finds that neither of these proffered reasons accurately reflects why the City Council rejected all bids on the noxious weed cutting project. Plaintiff's proofs established only that the City Council ordered the project re-bid because it was not satisfied that local businesses had received adequate notice to be given a fair opportunity to bid on the project. The City Council's action was not an attempt to establish a *de facto* residency requirement for public works contracts. Moreover, this action was not taken to reject plaintiff's bid simply because plaintiff was not a city resident. (See plaintiff's exhibits # 13, 14, 15, 16 and testimony of Mr. Lange and Mr. Guzi.)

15) After the City Council ordered the noxious weed cutting project re-bid, Mr. Ronald Guzi, purchasing agent for the City of Sterling Heights, compiled a list of eleven local Sterling Heights landscaping companies. This list was compiled from the Sterling Heights telephone directory. Mr. Guzi then notified these eleven Sterling Heights businesses, along with the original contract bidders, that the noxious weed cutting project was open for rebidding.

16) In response to this notification, plaintiff re-submitted his original bid. Plaintiff

was not, however, required to re-submit his original bid. If he had chosen to do so, plaintiff could have raised or lowered the amount of his original bid.

17) The City of Sterling Heights received a total of four bids in response to its second bid notification; all of these bids were from contractors who had originally bid on the project. When these bids were opened, it was determined that plaintiff's bid was only the third lowest. Plaintiff had been under-bid by two contractors who he had out-bid in the first bidding process. Because the lowest bidder was unable to post the required performance bond, the second lowest bidder was deemed the lowest qualified bidder.

18) On June 2, 1982, the City of Sterling Heights awarded the noxious weed cutting contract to the second lowest bidder, Cal Fleming Landscaping and Tree Service, Inc. This company is not a resident of Sterling Heights.

19) The City of Sterling Heights does not always award its contracts to the lowest bidder and has, on occasion, chosen not to go forward with a project for which bid notifications have been sent out. (Testimony of Mr. Lange, Mr. Guzi, Ms. Brockaway.) Additionally, Sterling Heights has no residency requirement in the awarding of public works contracts.

20) Plaintiff testified on two separate occasions that he was aware that he might not be awarded the contract even if he was the lowest qualified bidder. Plaintiff understood that the Sterling Heights City Council made all final decisions as to whether a public works contract would be awarded and, if so, to whom it would be awarded.

21) Finally, the Court finds that plaintiff offered no evidence of any impermissible custom or practice by the City of Sterling Heights.

## CONCLUSIONS OF LAW

In this case, the Court must determine what rights, if any, the plaintiff has as a disappointed bidder on a public works contract. The Plaintiff has raised both Equal Protection and Due Process claims which

may be resolved by addressing one basic issue: Did the plaintiff's proofs establish that he possessed a property interest which is deserving of protection under the Due Process and Equal Protection Clauses?

### A. Standards of Review

1) Defendants' motion for involuntary dismissal was brought pursuant to Federal Rule of Civil Procedure 41(b) and the proper standards for evaluating plaintiff's proofs are the Rule 41(b) standards. "When the defendant makes a Rule 41(b) motion to dismiss for insufficiency of the plaintiff's evidence it becomes the duty of the Court to weigh and evaluate the evidence." *Hersch v. United States,* 719 F.2d 873, 876 (6th Cir.1983), *quoting Weissinger v. United States,* 423 F.2d 795, 798 (5th Cir.1970). "Moreover, in evaluating the evidence, the judge makes no special inferences in favor of the plaintiff." *Hersch,* 719 F.2d at 876, *quoting Emerson Electric Co. v. Farmer,* 427 F.2d 1082, 1086 (5th Cir. 1970).

### B. Plaintiff's Due Process Claim

■ 2) Plaintiff's first claim is that, by not awarding him the contract for the noxious weed cutting project, the defendants violated his constitutional right to due process. In order for the plaintiff to succeed on this claim, he must prove both that the defendants deprived him of a property interest and that they did so through the application of improper or insufficient procedures. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ Only a few courts have addressed the issue of whether a disappointed bidder on a public works contract has a constitutionally protected property interest in that contract. *See L & H Sanitation, Inc. v. Lake City Sanitation, Inc.,* 585 F.Supp. 120 (E.D.Ark.1984); *Douglas N. Higgins, Inc. v. Florida Keys,* 565 F.Supp. 126 (S.D. Fla.1983); *Kendrick v. City Council of Augusta, Ga.,* 516 F.Supp. 1134 (S.D.Ga. 1981); *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6 (W.D.Pa.1981); *Three Rivers Cablevision v. City of Pitts-*

*burgh,* 502 F.Supp. 1118 (W.D.Pa.1980); *J.P. Mascaro & Sons, Inc. v. Township of Bristol,* 497 F.Supp. 625 (E.D.Pa.1980); *Coyne-Delany Co. v. Capital Development Bd.,* 616 F.2d 341 (7th Cir.1980); and *Estey Corp. v. Matzke,* 431 F.Supp. 468 (N.D.Ill.1976).

The United States Supreme Court has addressed the more general issue of what constitutes a property interest in the seminal cases of *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The essence of the Supreme Court's decision in these two cases is that a plaintiff can demonstrate a property interest only if he can show that he was entitled to some benefit under state law.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

The central question addressed by the disappointed bidder cases is whether a plaintiff has shown that the benefit he seeks to enjoy is one to which he is entitled or merely one he desires to enjoy. Similarly, the issue in the case now before the Court is whether the plaintiff has a legitimate claim of entitlement to the noxious weed cutting project. Defendants argue that "the uniform rule of State and Federal Courts throughout this country is that bidders on public contracts have no constitutionally protected interests in those contracts." In support of this position, the defendants cite *Estey Corporation v. Matzke,* 431 F.Supp. 468 (N.D.Ill.1976). The Court, nevertheless, disagrees that a plaintiff may never have a constitutionally protected property interest in such cases. Rather, the Court believes that the particular facts of each case must be separately considered in order to determine whether a constitutionally protectable interest, as defined under state law, is present.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

█ The plaintiff relies heavily on *Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa.1980), to substantiate his claim that he had a legitimate property interest in the noxious weed cutting project. The Court believes that *Three Rivers* and later cases stand for the proposition that where a state statute requires public works contracts to be awarded to the lowest qualified bidder, and where a decision has been made to award such a contract, bidders have a *limited* property interest in not having the procedure, which regulates the enjoyment of the benefit sought, applied in an arbitrary or capricious manner. *L & H Sanitation, Inc.,* 585 F.Supp. 120, 123. "An entitlement may exist with respect to a benefit which is sought but not yet obtained whenever state law limits the exercise of discretion by the state official responsible for conferring the benefit." *Hixon v. Durbin,* 560 F.Supp. 654, 659 (E.D.Pa.1983).

The difficulties confronting the plaintiff in this case are threefold: 1) no state law regulates the discretion of the defendant officials to award the contract in question; 2) plaintiff proved no practice by the defendant city which could serve as the basis of such a limitation; and 3) plaintiff's proofs failed to establish that a decision had been made to award the contract at the time the City Council ordered it re-bid.

The City of Sterling Heights explicitly reserved the right in the award of the instant contract and in the award of all public works contracts, to reject any and all bids if doing so would benefit the public

interest. This reservation of rights was set forth both in Section 1302 of the City Charter and in the bid specifications for the weed cutting project. (See findings of Fact 5 and 6.) Moreover, in contrast to *Teleprompter of Erie, supra,* and *L & H Sanitation, supra,* Sterling Heights was not bound to accept the lowest bid under Michigan law.

The plaintiff offered the Court no statutory or case law authority to support his proposition that Michigan law vests a property interest in the plaintiff in this case. Succinctly, plaintiff could not answer the basic question of what state law defines the nature and extent of his alleged property interest.[2] Indeed, Michigan law gives no rights to plaintiffs in cases such as this. *See, Talbot Paving Co. v. Detroit,* 109 Mich. 657, 67 N.W. 979 (1896); *Detroit v. Wayne Circuit Judge,* 128 Mich. 438, 87 N.W. 376 (1901); *Kundinger v. City of Saginaw,* 132 Mich. 395, 93 N.W. 914 (1903); *City of Saginaw v. Consumers' Power Co.,* 213 Mich. 460, 182 N.W. 146 (1921); *City Commission v. City Attorney,* 313 Mich. 644, 21 N.W.2d 906 (1946); and Op.Atty.Gen.1979, No. 5599, p. 484. Similarly, plaintiff failed to establish the existence of any *de facto* practice by Sterling Heights sufficient to create and define a property interest. Having found that Sterling Heights does not always award public works contracts to the lowest bidder and that the City has, in fact, chosen not to go forward with projects for which bid solicitations have been sent out, the Court finds that plaintiff has failed to establish *de facto* property interest. *See, Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Finally, the Court finds that plaintiff's due process claim fails because plaintiff failed to show that the City Council had made a decision to award the contract as of April 20, 1982. Rather, the Court finds that plaintiff's proofs established only that Sterling Heights decided to award the noxious weed cutting contract as of June 1, 1982. Thus, plaintiff could have had no property interest in the project on April 20, 1982 because no final decision had been made to award the contract. It is also important to note that the plaintiff himself knew that he might not be awarded the contract even if he was low bidder. Plaintiff knew that the City Council would make the final determination and that the City Council might well award the contract to another bidder if it found that doing so was in the public interest. Thus, plaintiff had no legitimate claim of entitlement to the noxious weed cutting contract but, rather, merely had a hope and desire that it would be awarded to him.

### C. Plaintiff's Equal Protection Claim

■ 3) Plaintiff's second argument is that the defendants violated his constitutional right to Equal Protection, Plaintiff claims that the City Council rejected his bid because he was not a Sterling Heights resident. Nevertheless, plaintiff's Equal Protection claim suffers from the same defect as his Due Process claim in that the plaintiff cannot show that he was deprived of a property interest. More importantly, plaintiff failed to prove his initial premise that his bid was rejected merely because he was not a Sterling Heights resident. Even assuming that the plaintiff established the existence of such a property interest, he

---

**2.** Plaintiff's answer to this crucial question was simply that

In the present case, the City of Sterling Heights prepared bid specifications in connection with the public improvement. Prospective bidders, including plaintiff, were required to follow all of the requirements contained in the specifications. Based upon the above-cited authorities, it is clear that the contract specifications constituted the 'existing rules or understandings' from which a property interest was created. Plaintiff's interest was the

right to have the City of Sterling Heights comply with the 'existing rules' governing the bidding process. (Plaintiff's trial brief p. 34.) To the extent that plaintiff argues that the bid solicitation defines the nature and extent of the property interest, plaintiff's principal case disputes that conclusion. *Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. 1118, 1128 (W.D.Pa.1980). Moreover, a simple reading of the bid specifications disputes this conclusion and plaintiff can point to no applicable state law.

failed to show that he was deprived of that interest through the application of an impermissible classification.

Assuming that it is subject to Equal Protection scrutiny at all, the defendants' conduct would only be required to pass scrutiny under a rational basis standard. Plaintiff's claim does not implicate any fundamental right or suspect class that would indicate that the proper standard of review is strict scrutiny. *See, Dandridge v. Williams,* 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970); *U.S. Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174–76, 101 S.Ct. 453, 459–60, 66 L.Ed.2d 368 (1980). *See also, Gold Cross Ambulance v. City of Kansas City,* 538 F.Supp. 956, 970 (W.D.Mo.1982). Evaluated under a rational basis standard, the decision of Sterling Heights to re-bid the noxious weed cutting contract is constitutional. Sterling Heights could reasonably desire to have local businesses bid on public works contracts even though the City does not have a municipal residence requirement for the award of such contracts.[3] In doing so, the City of Sterling Heights did not foreclose plaintiff from being awarded the contract and did not institute a *de facto* residency requirement. In fact, the contract was ultimately awarded to a nonresident company, and had Sterling Heights simply desired to award the contract to a resident business, it could have done so in the initial bidding process in that W.J. Rogers, Inc. was a local business. Plaintiff was free to re-bid the contract and to have that bid considered equally with all others submitted.

### D. Plaintiff's Pendant State Claims

■ 4) Plaintiff's final argument is that defendants' actions violated the Equal Protection and Due Process protections afforded him under the Michigan Constitution. Inasmuch as this Court finds that plaintiff's federal claims fail and because plain-

tiff's rights under the Michigan Constitution are commensurate with but not greater than plaintiff's federal protections, the Court finds that plaintiff's state claims also fail. *Baldwin v. North Shore Estates Ass'n,* 384 Mich. 42, 50–51, 179 N.W.2d 398 (1970).

Accordingly, plaintiff's claims are DISMISSED.

IT IS SO ORDERED.

---

**3.** Because the Court finds that Sterling Heights had no municipal residency requirement, the Court does not reach plaintiff's arguments concerning its purported unconstitutionality. Similarly, the Court does not reach defendants claim that such residency requirements are *per se* law-

ful following the Supreme Court decision in *White v. Mass. Council of Constr. Employers,* 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983). *Cf. United Bldg. & Constr. Trades v. Mayor,* —— U.S. ——, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984).