# NOLAN CONTRACTING, INC.

### v.

# REGIONAL TRANSIT AUTHORITY.

### No. 86–478.

United States District Court,
E.D. Louisiana.

May 9, 1986.

---

**24**

C. Michael Winters, New Orleans, La., for Nolan Contracting, Inc.

Terrel Broussard, Sr. Staff Atty., Regional Transit Authority, John M. Landis, Sheila M. Lambert, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for Regional Transit Authority.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PATRICK E. CARR, District Judge.

Plaintiff, Nolan Contracting, Inc. ("Nolan"), is a dissappointed bidder challenging the validity of the affirmative action program adopted by the defendant, Regional Transit Authority ("RTA"). Nolan alleges that the RTA's program violated its rights to due process and equal protection under the Fifth and Fourteenth Amendments, and its statutory rights under the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, and the Louisiana Public Bid Law, La.R.S. 38:2212 *et seq.*

This matter came on for trial before the Court on March 31, 1986. At that time the parties submitted a joint stipulation of fact. The parties also stipulated to the admissability of all documentary evidence. No live or deposition testimony was offered. Based upon the foregoing, the Court took the matter under submission and allowed the parties time to submit post-trial memoranda.

Upon review of the facts as stipulated, the documents and pleadings in evidence, and the applicable law, the Court hereby renders its findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

The Court has jurisdiction pursuant to 28 U.S.C. 1331, with pendent jurisdiction over the state claims. Venue is proper.

Nolan is a licensed Louisiana resident general contractor and subcontractor that has participated in a substantial number of municipal and private contracts throughout the State of Louisiana, including the City of New Orleans. The RTA is a political subdivision of the State of Louisiana, created pursuant to the Regional Transit Authority Act of 1979, La.R.S. 48:1651, *et seq.*

On October 7, 1985, the RTA issued Invitation for Bids No. 84–066 for construction of the Algiers Park & Ride Project. (Exhibits P–13 and D–17). Funding for the project was received from the Urban Mass Transit Administration ("UMTA"), which is an element of the United States Department of Transportation.

In 1979, the UMTA had approved a grant to construct the Algiers facility. The grant was between the City of New Orleans and the UMTA. The City then donated the land and the land value was used to match federal funds. Pursuant to a transit agreement between the City and the RTA, the RTA agreed to assume this property from the City and the grant for the project was transferred to the RTA's name. The grant and the conditions thereto became a part of the RTA's contractual obligation. (See Exhibit D–3.)

The Department of Transportation has had a longstanding policy of "supporting the fullest possible participation of firms owned and controlled by minorities and women" in transportation programs. 49 C.F.R. §§ 23.1(a), 23.43(a)(1). To that end,

the Department has enacted regulations requiring recipients of federal funds to implement Minority Business Enterprise ("MBE") programs. 49 C.F.R. 23.41, *et seq.* Recipients of funds must submit programs for approval. Upon approval, the programs are to be immediately implemented. Failure to carry out the requirements of the program carries penalties, including the loss of the federal funding. 49 C.F.R. §§ 23.43(c), 23.45(h)(3), 23.68(e)(2).

The federal regulations require the contract recipients to establish overall goals for the use of disadvantaged businesses. Such goals are to be based upon the known availability of MBE's and upon past experience, among other factors. Agencies accepting UMTA funding must set percentage goals for the dollar value of work to be performed by MBE's on an overall funding basis and for each specific contract. 49 C.F.R. §§ 23.45(g), *et seq.* Unless the Secretary of Transportation determines otherwise, recipients are required to "set and meet overall disadvantaged business goals of at least ten percent." 49 C.F.R. 23.61.

The federal regulations also provide selection criteria to ensure that contracts are awarded to competitors meeting the MBE goals. Initially, these regulations established a conclusive presumption rule as follows:

> If any competitor offering a reasonable price meets the MBE contract goal, the recipient shall presume conclusively that all competitors that failed to meet the goal have failed to exert sufficient reasonable efforts and consequently are ineligible to be awarded the contract.

49 C.F.R. 23.45(i) (1980).

This conclusive presumption rule was eliminated in 1981. The current regulations provide instead for a showing of good faith efforts on the part of the competitor to meet the MBE goals. The regulations also provide:

> The recipient may prescribe other requirements of equal or greater effectiveness in lieu of good faith efforts.

49 C.F.R. 23.45(h)(2)(i) (1985).

The UMTA has specifically authorized recipients of its funds to continue use of the conclusive presumption rule as an alternative "of equal or greater effectiveness in lieu of good faith efforts." (Exhibit D-7 at page I-16.)

The RTA formulated and submitted an MBE program to the UMTA. It was approved as submitted in 1982 and has been readopted in the ensuing fiscal years. (Exhibits D-1 and D-5.) The RTA's MBE program provides for the setting of percentage goals for the dollar value of work to be awarded to MBE's for each contract let by the RTA. The MBE contract goal set by the RTA for the Algier's Park & Ride Project was 30%.

The RTA's program, approved by the UMTA, incorporates the conclusive presumption rule. (Exhibits D-1 and P-13 and D-17 at attachment II page 7 of 30.) The 30% MBE goal became a substantive part of the bid specifications for the Algiers Park and Ride Project. *id.* See also, 45 Fed.Reg. 45286 (July 3, 1980).

On October 22, 1985, the RTA received bids for the Algier's project from four firms, one of which was Nolan. (Exhibits D-18 through D-21.) Nolan's bid was the lowest, but failed to meet the 30% MBE goal. Two of the bids, although not the lowest, were found to be reasonably priced and did in fact meet the MBE goal of 30%. The two remaining bids, one of which was Nolan's, were declared nonresponsive by the RTA for failure to meet the MBE goal, in accordance with the program's conclusive presumption rule. On October 23, 1985, the contract was awarded to another contractor as the lowest responsive and responsible bidder.

The RTA deems Nolan a responsible bidder in that it has no basis for disputing Nolan's experience, qualifications or ability to complete the Project. The RTA simply deemed Nolan's bid, for this particular project, nonresponsive.

By mailgram dated November 8, 1985, Nolan protested the award of the contract to the other contractor. (Exhibits P-2 and

D–24.) The RTA then gave written notice to Nolan of the reasons why its bid was deemed not responsive and scheduled an informal hearing for the purpose of permitting Nolan to present evidence and argument in support of its protest. (Exhibits P–3 and D–26.) The RTA held an informal hearing on Nolan's protest on November 27, 1985. Nolan, represented by its project manager and its legal counsel, contended that its bid should be deemed responsive because it had made a sufficient reasonable effort to meet the 30% MBE contract goal. Nolan also offered documentary proof of its efforts to meet the goal. (Exhibits P–11 and P–12.)

On December 2, 1985, the RTA issued a written decision rejecting Nolan's protest and notifying Nolan of its right to an administrative appeal. The rejection of Nolan's bid and protest was again based upon the MBE requirement and upon the conclusive presumption rule. (Exhibits P–5 and D–27.)

Nolan timely appealed the decision and on January 2, 1986, the RTA again issued a written decision rejecting the appeal. Nolan was again given notice that it could file a further administrative appeal to the UMTA or take other legal action. (Exhibits P–6, P–7, D–28 and D–29.) Nolan did not appeal to the UMTA but instead filed the instant suit.

Nolan seeks to invalidate the 30% MBE goal under the Constitution, the Federal Civil Rights Act and the State Public Bid Law and further seeks to have the contract awarded to it.

In order to prevail on its claims, Nolan must prove that the RTA deprived it of a property right without due process and equal protection of the law. The first issue to be resolved is whether or not the plaintiff's asserted deprivation rises to a level with which the Constitution is concerned. In order to have such a property interest, the plaintiff must have a "legitimate claim of entitlement" which is to be determined by reference to state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *J.P.*

*Mascaro & Sons, Inc. v. Township of Bristol*, 497 F.Supp. 625, 627 (E.D.Pa.1980).

The Louisiana Public Bid Law provides in pertinent part:

> All public work ... to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans, and specifications as advertised ...

La.R.S. 38:2212 A(1)(a). This statute was enacted for the purpose of preventing favoritism and exorbitant pricing in the award of public contracts and for the overall benefit of the taxpayers. *Budd Const. Co., Inc. v. City of Alexandria*, 401 So.2d 1070, 1077 (La.App. 3rd Cir.) *writ den.* 404 So.2d 1262 (La.1981); *Haughton Elevator Division v. State, Division of Administration*, 367 So.2d 1161, 1164 (La.1979).

It is firmly established in Louisiana that a low bidder on a public contract may sue to set aside the award of the contract to another bidder. *Haughton*, supra; *Williams v. Board of Sup'rs, Etc.*, 388 So.2d 438, 441 (La.App. 2d Cir.1980). In this regard, Louisiana recognizes that the lowest responsible and responsive bidder has a statutory entitlement entailing the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution. *Williams*, supra. *Housing Authority of the City of Opelousas v. Pittman Construction Company*, 264 F.2d 695 (5th Cir.1959). The awarding agency is thus held to the Constitutional requirement that, in the exercise of its discretion, it must not act unfairly, arbitrarily or irrationally in the award of a public contract. *Haughton*, supra. *Ted Hicks & Associates, Inc. v. Stroud*, 434 So.2d 1157 (La.App. 1st Cir.1983); *Williams*, supra.

■ Based upon the Louisiana jurisprudence and upon the particular facts and circumstances of this case, the Court finds that Nolan has sufficiently alleged a limited property right protected by the Constitution and laws of tne United States and the State of Louisiana, *Id. See also: L & H Sanitation, Inc. v. Lake City Sanita-*

tion, Inc., 585 F.Supp. 120 (E.D.Ark.1984) aff'd 769 F.2d 517 (8th Cir.1985); *Kasom v. City of Sterling Heights,* 600 F.Supp. 1555 (E.D.Mich.1985); *Teleprompter of Erie, Inc. v. The City of Erie,* 537 F.Supp. 6 (W.D.Pa.1981) and, *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa.1980). *But cf. ARA Services, Inc. v. School Dist. of Philadelphia,* 590 F.Supp. 622 (E.D.Pa.1984); *Kendrick v. City Council of Augusta,* 516 F.Supp. 1134 (S.D.Ga.1981); *J.P. Mascaro. supra;* and, *Estey Corp. v. Matzke,* 431 F.Supp. 468 (N.D.Ill.1976).

■ The RTA, a state created agency, is subject to the Louisiana Public Bid Law. La.R.S. 48:1655(K)(3); 48:1660. That law requires only that the contract be awarded to the lowest responsible and responsive bidder, i.e.: the bid must be responsive to the "contract, plans and specifications as advertised ..." La.R.S. 38:2212A(1)(a). Louisiana does not required, nor specifically prohibit, the inclusion of affirmative action programs in specifications for public contracts, such as the one in the case at bar. *Cf.* The Louisiana Small Business Procurement Act. La.R.S. 38:2233, *et seq.;* 39:1731, *et seq.* However, the RTA is permitted to contract with, and accept grants from, the federal government. La.R.S. 48:1656(11). Hence, substantive bid requirements, such as the one in the case at bar, are impliedly authorized.

It is undisputed that Nolan's bid did not comply with the MBE as an advertised specification in the contract. Hence, the issue is whether or not the inclusion of the specification as such, and the use of the conclusive presumption rule to disqualify Nolan's bid, was an arbitrary or irrational deprivation of Nolan's rights.

The use of racial or ethnic classifications in order to remedy the effects of past discrimination is permissable. The program must be limited and narrowly drawn to meet the goal of curing past discrimination without conflicting with constitutional guarantees. Appropriate findings must be made to support the program and justify the use of the classifications. *Fullilove v.*

*Klutznick,* 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980); *Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

In the case at bar, the parties do not dispute the existence of a legitimate and substantial interest in ameliorating the effects of past discrimination. Nor do the parties dispute the finding that a program was necessary to remedy the effects of past discrimination. *See, M.C. West, Inc. v. Lewis,* 522 F.Supp. 338 (M.D.Tenn.1981); and, *Central Alabama Paving, Inc. v. James,* 499 F.Supp. 629 (M.D.Ala.1980). Rather, Nolan asserts that the RTA's 30% MBE requirement, which exceeds the 10% federal minimum, is excessive and unreasonable. Further, Nolan asserts that the use of the conclusive presumption rule is arbitrary and irrational.

■ The 30% MBE goal for the Algiers Park and Ride Project was specifically adopted by the RTA, with the approval of the UMTA, after careful analysis of its past record of accomplishing MBE participation, the number and types of MBE's available to compete for the contract, investigation of a wide range of available data on business patterns in general and the existing business patterns in the local geographic area. (See Exhibits D–1, D–12.) It is particularly noteworthy that in past years, and in particular on this project, MBE goals have been met and exceeded without difficulty. *Id.* (*See also* Exhibits D–19 and D–20).

■ Where an administrative agency has exercised its broad discretion in good faith, the court will not substitute its judgment. *Haughton Elevator, supra; Williams,* supra. In the case at bar, the RTA and the UMTA have concluded that a goal of 30% MBE participation is not unreasonable. The Court finds in fact that the 30% goal is practical, reasonable, and based upon appropriate findings. Agencies are authorized to exceed the federal minimum of 10%. 49 C.F.R. §§ 23.61, 23.64. Exceeding the minimum in a practical way by increasing the percentage of participation of

MBE's based upon appropriate and detailed investigation, analysis and findings, comports with the Department of Transportation's policy of ensuring maximum participation by MBE's. The 30% MBE participation goal also comports with Constitutional standards in that it is not an arbitrary, unreasonable, or excessive requirement. *Fullilove,* supra; *M.C. West,* supra.

■ The final question is whether or not the use of the conclusive presumption rule violates the Constitution. Conclusive presumptions are permissable as long as they are not based on irrational, unreasonable or arbitrary standards. *Burlington Northern Railroad Co. v. Department of Public Service Regulations,* 763 F.2d 1106 (9th Cir.1985); *Edelberg v. Illinois Racing Board,* 540 F.2d 279 (7th Cir.1976) and cases cited therein.

First, the Court finds, as it has already concluded, that the 30% MBE goal was not arbitrary, irrational or unreasonable. Furthermore, the RTA had a rational basis for believing that the goal could in fact be met if good faith reasonable efforts were made. Second, the RTA fully complied with the Federal regulations governing the implementation of the MBE program by considering the necessary factors and submitting and obtaining approval of the program by the UMTA. The conclusive presumption rule is a specifically approved alternative to the "good faith efforts" requirement of the regulation. 49 C.F.R. 23, *et seq.;* Exhibit D–7 at I–16. Third, the RTA has acted reasonably, rationally and fairly in utilizing the conclusive presumption rule. The rule establishes an objective standard which all bidders must meet regardless of good faith efforts. The presumption serves the dual purpose of ensuring compliance with the MBE provisions and enhancing the administrative efficiency of the RTA by streamlining the process of elimination of bids. Fourth, the rule only attaches when other reasonably priced bids meet or exceed the MBE goal. If no bids meet the goal, the RTA is permitted to reject all bids or pursue the question of substantial, reasonable

and good faith compliance with the goal by each bidder. 49 C.F.R. 23.45; Exhibit D–1.

■ In the case at bar, two of the four bids met the MBE goal. Hence, the conclusive presumption rule attached, disqualifying Nolan's bid and making its good faith efforts to comply irrelevant. In spite of this, Nolan was accorded an informal evidentiary hearing and administrative review of his bid protest. The Court finds that the use of the conclusive presumption rule did not violate Nolan's rights to due process or equal protection of the laws as required by the United States Constitution Amendments Five and Fourteen.

Having concluded that the 30% MBE requirement and the conclusive presumption rule pass Constitutional muster, Nolan's claim for relief under the Civil Rights Act and the Louisiana Public Bid Law must also fail.

For the foregoing reasons, this matter should be dismissed.

Judgment shall be rendered accordingly.