**MICHIGAN ENVIRONMENTAL RE-
SOURCES ASSOCIATES, INC., a
Michigan corporation, Plaintiff,**

v.

**COUNTY OF MACOMB, et
al., Defendants.**

**Civ. A. No. 84CV2520DT.**

United States District Court,
E.D. Michigan, S.D.

Sept. 18, 1987.

Delmer C. Gowing, III and James A.
Tuck, Bloomfield Hills, Mich., for plaintiff.

Robert S. Cubbin, Frank E. Brochert,
Detroit, Mich., for defendants.

MEMORANDUM OPINION
AND ORDER

PHILIP PRATT, Chief Judge.

Before the court is defendant County of Macomb's motion for summary judgment. Fed.R.Civ.P. 56. This motion presents the issue of whether the plaintiff had a constitutionally protected property interest by virtue of its application for a landfill site. For the reasons stated herein, the court holds that it did not. Therefore, the court grants the defendant's motion and orders an entry of a judgment of dismissal in this matter.

I.

Plaintiff Michigan Environmental Resources Associates, Inc. (MERA) brings this action to rectify what it perceived as an unconstitutional denial of its application to construct a sanitary landfill site in Macomb County. The basis of plaintiff's suit is that the County's rejection of its landfill site was "arbitrary" and "capricious" decision-making by the Macomb County Board of Commissioners. It is alleged that the defendants did not follow the procedures established by the state legislature in the Solid Waste Management Act, M.S.A. 13.-29(1) et seq., M.C.L. 299.401 et seq. As a result of these alleged violations, MERA contends that its due process rights under the U.S. Constitution, the Michigan Constitution and 42 U.S.C. § 1983 have been violated.

The Michigan legislature enacted the Solid Waste Management Act in 1978, which required Michigan counties to prepare and submit a solid waste management plan to the state Department of National Resources (DNR). The Macomb County plan, entitled Macomb County Solid Waste Management Plan (MCSWMP or the Plan), sets forth procedures for reviewing and approving proposed sanitary landfill sites.

In August 1981, MERA contacted the Macomb County Board of Commissioners requesting approval of property it had purchased as a county landfill site.[1] The site

---

1. The following statement of facts is drawn primarily from this court's memorandum opinions, dated December 12, 1984, and July 30, 1986.

was evaluated by the procedures set forth in the MCSWMP. The Technical Review Committee (TRC) first evaluated and rated the proposed site on a scale of 0 to 450 possible points. Plaintiff's site received a score of 348 points from the TRC. Plaintiff's proposal was then forwarded to the Solid Waste Planning Committee (Committee). The Committee voted to recommend construction of the landfill and passed its recommendation on to the Macomb County Board of Commissioners. As a final step in the review process, the Board of Commissioners has the authority to either "approve or reject the site" under the Plan. In making this decision, this court has held that the Board of Commissioners "is vested with substantial discretion." Memorandum Opinion and Order at 11 (July 30, 1986). On February 22, 1984, the Board of Commissioners voted unanimously to reject plaintiff's Plan and not forward it to the DNR for further consideration, i.e., a construction permit application.

Several months later the Board of Commissioners approved a proposed site by another firm and forwarded its approval to the DNR. The successful firm, A & A Landfill, Inc., was rated 61 points higher than MERA by the TRC evaluation and review procedure. After MERA's proposed site was rejected and the A & A Landfill site approved, MERA filed this lawsuit seeking $4.5 million in actual damages and $1 million in punitive damages. MERA bases its damage claim on the allegation that it had been negotiating with a third party for the sale of the proposed landfill site, and because MERA's site was not approved, the third party refused to pay for the land.

## II.

A court may enter summary judgment on a claim if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). However, the trial court ought proceed with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The authority of the court to take a case away from the jury is limited, with all doubts to be resolved in the non-movant's favor. *Id.* 106 S.Ct. at 2513. Applying these standards, the court grants the defendant's motion because no geniune issue of material fact exists, and the County is entitled to judgment as a matter of law.

## III.

Section 1983 of Title 42 of the United States Code is a jurisdictional statute that allows a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." To state a claim under § 1983, a plaintiff must show two things: 1) that the defendant acted under color of state law, and 2) that the defendant deprived the plaintiff of a federal right, either statutory or constitutional. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Bacon v. Patera*, 772 F.2d 259 (6th Cir.1985). The defendant here, the County of Macomb, does not deny that its conduct was under color of state law. The question here is whether the defendant has deprived the plaintiff of a federally protected right.

MERA's suit is based on a violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. The Due Process Clause may be said to protect persons in two separate ways. First, it provides "that certain substantial rights—life, liberty and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Loudermill v. Cleveland Board of Ed.*, 470 U.S. 532, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). This protection is termed procedural due process. Secondly, "there are certain types of governmental acts that violated the Due Process Clause regardless of the procedures used to implement them. When the government engages in such conduct, there is a remedy under § 1983." *Nishiyama v.*

*Dickson County Tennessee,* 814 F.2d 277, 281 (6th Cir.1987). *Accord Wilson v. Beebe,* 770 F.2d 578 (6th Cir.1985). This second protection is termed substantive due process.

In order to extend the protection of the Due Process Clause to any particular plaintiff, however, the court must determine whether the liberty or property interest at issue is constitutionally protected. This is true whether the plaintiff alleges violation of procedural due process, *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1975); *Riverview Investments v. Ottawa Community Improvement Corp.,* 769 F.2d 324, 327 (6th Cir.), *rehearing denied and opinion supplemented,* 774 F.2d 162 (6th Cir.1985), or substantive due process. *Stevens v. Hunt,* 646 F.2d 1168, 1169–70 (6th Cir.1981). *See also Carolan v. City of Kansas City, Mo.,* 813 F.2d 178, 181 (8th Cir.1987). Therefore, if application for the landfill did not create a constitutionally protected property interest, MERA may not claim the protections of the Due Process Clause.

A constitutionally protected property interest arises if state or federal law creates an "entitlement." The seminal case in this regard is *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). *Roth* teaches that:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.* at 577, 92 S.Ct. at 2709. In order to determine whether an entitlement exists, the Supreme Court has directed that one should look to state law:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are de-fined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

An entitlement is created where state law requires or mandates that a benefit be awarded. If the award of the benefit is discretionary, however, courts have held that constitutionally protected rights do not exist. In *Riverview Investments, supra,* a Sixth Circuit panel held that an application for industrial revenue bonds did not create a protected property interest. The statutory authority for issuing the bonds states that an "issuer may issue bonds for the purpose of providing money to acquire ... one or more projects ..." Ohio Rev.Code Ann. § 165.03(A) (Page 1984). The court held that this language "makes issuing the bonds discretionary." 769 F.2d at 326. Finding that no entitlement existed, the court affirmed the district court's grant of the defendant's motion for summary judgment.

The plaintiffs rely primarily on the oft-cited case of *Three Rivers Cablevision v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D. Pa.1980). In that case, the City of Pittsburgh solicited bids for a cable television system for the city. The city council passed an ordinance providing for contract terms and specifications to be met. City officials informed interested parties that no amendments to their proposals would be allowed. The city also required that contracts be awarded to the "lowest responsible bidder." All bids were initially rejected by the city, and the four companies resubmitted their bids. The city then allegedly allowed one of the plaintiff's competitors to amend its second bid after private meetings. The competitor was awarded the contract, and the plaintiff company brought suit.

The court held that a constitutionally protected property right had arisen:

> [I]n the circumstances of this case a property interest of relatively narrow dimension exists. Simply stated, that in-

terest was the right of the lowest responsible bidder in full compliance with the specifications to be awarded the contract once the city in fact decided to make an award.

*Id.* at 1131. Holding that the city's "unfettered discretion became circumscribed" by its decision to make an award in the first instance, the court held that the plaintiff had stated a claim upon which relief could be granted.

Courts have interpreted *Three Rivers* narrowly. In *Kasom v. City of Sterling Heights*, 600 F.Supp. 1555 (E.D.Mich.1985), *aff'd mem.*, 785 F.2d 308 (6th Cir.1986), for example, the court held that *Three Rivers* meant only that if the governmental unit had in fact no discretion in awarding the benefit, a constitutionally protected property interest would arise. In *Kasom*, the defendant city under its procedures, reserved the right to reject "any and all bids." The court found that the city did not always award contracts, despite bids being made and sometimes awarded contracts to a bidder other than the lowest bidder. During its analysis, the court stated its understanding of *Three Rivers* and its relatives:

> The Court believes that *Three Rivers* and later cases stand for the proposition that where a state statute requires public works contracts to be awarded to the lowest qualified bidder, and where a decision has been made to award such a contract, bidders have a *limited* property interest in not having the procedure, which regulates the enjoyment of the benefit sought, applied in an arbitrary and capricious manner. [citation omitted] "An entitlement may exist with respect to a benefit which is sought but not yet obtained whenever state law limits the exercise of discretion by the state official responsible for conferring the benefit." *Hixon v. Durbin*, 560 F.Supp. 654, 659 (E.D.Pa.1983).

*Id.* at 1559 (emphasis in original). Under the facts of the case, the *Kasom* court held that the *Three Rivers* analysis did not apply. The court found that no state law regulated the discretion of the officials to award such contract, no established practice of the city limited its discretion, and the plaintiff did not establish that a decision had been made by the city to award a contract. *See also Curtis Ambulance v. Shawnee County Board of County Commissioners*, 811 F.2d 1371, 1377 and n. 3 (10th Cir.1987) (rejecting *Three Rivers* and holding that a constitutionally protected property right does not arise "merely because the Board did in fact establish a competitive bidding procedure" in which the plaintiff participated); *Carolan, supra*, 813 F.2d at 181 (holding that "state law creates a property interest in a building permit if the municipality, under state law or ordinance, lacks discretion and must issue a building permit to an applicant who complies with the statutory requirements *and* the applicant has fulfilled the requirements" (emphasis in original)); *Urban Sanitation Corp. v. City of Pell, Ala.*, 662 F.Supp. 1041, 1046 (N.D.Ala.1986).

Having previously found that the Macomb County Board of Commissioners has wide discretion in making landfill site determinations, the court holds that MERA had no constitutionally protected interest in its application. In this court's Memorandum Opinion and Order (July 30, 1986) at 11, this court held that although the court "was initially uncertain as to the precise function of the defendant board, it is clear under the procedures that the board is vested with substantial discretion."

This finding was based on the language on the MCSWMP. The Plan states in pertinent part:

> The comments of the Solid Waste Planning Committee will be forwarded to the Macomb County Board of Commissioners, which would judge the consistency of the proposal to this plan based on information supplied by the Solid Waste Planning Committee.

MCSWMP at 20.

> The Solid Waste Planning Committee will notify the Macomb County Board of Commissioners regarding its decision as to whether the proposed site complies or does not comply with the criteria established in this plan. The Board will ap-

prove or reject the site based on information supplied by the Solid Waste Planning Committee.

MCSWMP at 159.

The Board of Commissioners will consider the information supplied by the Solid Waste Planning Committee in its action.

MCSWMP at 175–76.

Therefore, to ensure that only the better sites are developed, a landfill must comply a total of at least 75% of the possible 450 points to be in conformance with this plan. Thus, a site obtaining a point value of 338 or greater would be acceptable for consideration.

MCSWMP at 149. In light of these descriptions of the Board's functions, and the role of the point system, MERA's arguments that the Board's role is ambiguous is unfounded. The court remains convinced that the evaluations of the TRC and the Solid Waste Management Committee were mere recommendations. The Board could make its own determination as to whether the proposed site met the criteria of the Plan. In other words, even after the favorable recommendation of the TRC and the Solid Waste Management Committee, MERA still only had a "unilateral expectation," not a property interest that MERA could have relied upon.

MERA has presented no Michigan law that would support a showing of entitlement. MERA points to *Midwest Teen Center, Inc. v. City of Roseville,* 36 Mich.App. 627, 193 N.W.2d 906 (1971) and *Eastwood Park Amusement Co. v. Mayor of East Detroit,* 325 Mich. 60, 38 N.W.2d 77 (1949). In both cases, Michigan courts held that once a license was granted, a constitutionally protected property interest was created, and could not be revoked without due process of law. Such a rule comports with the holding of *Roth:* persons who possess a license generally come to rely on it in their daily lives. Reliance transforms it into constitutionally protected property.

Here, however, MERA never possessed a permit.[2]

MERA also points to *Huron Valley Hospital v. City of Pontiac,* 612 F.Supp. 654 (E.D.Mich.1985), *aff'd in part and appeal dismissed in part,* 792 F.2d 563 (6th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986). In that case, the court found there was an entitlement to a "certificate of need," a document necessary before a hospital may be constructed. However, in that case, "Michigan courts determined that plaintiff was entitled to a certificate of need and ordered that one be issued, and defendants continued to resist. Indeed, the state courts have already held that plaintiff was denied due process in the consideration of its application." *Id.* at 661. Here, no such state court findings exist. MERA has not even attempted to obtain a review of the Board decision by state courts.

Finally, there is no genuine disputed issue of fact. MERA claims that the MCSWMP is ambiguous, and therefore the best course if to proceed to trial. This argument is unfounded, as the court has found clear language that MCSWMP contemplates giving the Board substantial discretion. MERA also cannot point to any past practices nor any other evidence which would raise an inference that any prior Board conduct has resulted in circumscribing the Board's discretion.

Therefore, the court grants the County's Motion for Summary Judgment and enters a judgment of dismissal.

IT IS SO ORDERED.

---

2. Indeed, one Michigan court has held that even though the DNR had issued a construction permit for a landfill site under the Act, a rejection of the site by the county would not be a deprivation of a protected property interest. *Lyon Development Co. v. Michigan Department of Natural Resources,* 157 Mich.App. 190, 403 N.W.2d 78 (1986).