2000 SD 148

## TRI COUNTY LANDFILL ASSOCIATION, INC., Plaintiff and Appellee,

v.

## BRULE COUNTY, South Dakota, Defendant and Appellant.

### Nos. 21143, 21171.

Supreme Court of South Dakota.

Argued on April 26, 2000.

Decided Nov. 29, 2000.

---

See also, 535 N.W.2d 760.

Robert Schaub of Larson, Sundall, Larson, Schaub & Fox, Chamberlain, Attorneys for plaintiff and appellee.

Steven M. Johnson, A. Russell Janklow of Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, and Sheila S. Woodward, Yankton, Attorneys for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Brule County (County) appeals the granting of summary judgment in favor of Tri County Landfill Association (Landfill) on its 42 U.S.C. § 1983 action. Landfill filed a notice of review raising numerous issues. We affirm in part, reverse and remand.

## FACTS

[¶ 2.] This is a companion case to a prior decision of this Court. *See Tri County Landfill Ass'n v. Brule County*, 535 N.W.2d 760 (S.D.1995) (hereinafter *Tri County I* ).[1] In *Tri County I*, the issue before this Court was whether Brule County's denial of Landfill's second requested permit to build a landfill was "arbitrary and capricious." In the present case, we are faced with Landfill's § 1983 action against County claiming violation of its constitutional rights by this permit denial.

[¶ 3.] On February 9, 1993, Brule County Commission agreed, pursuant to a resolution passed by County, to sell forty acres

---

1. A more detailed rendition of the facts can be found in *Tri County I.*

of land to Landfill.[2] On April 27, 1993, County's zoning board granted Landfill a special exception to the local zoning ordinance to construct a solid waste facility on the property. Landfill subsequently filed a landfill permit application with the South Dakota Department of Environment and Natural Resources (DENR) which was tentatively approved on July 29, 1993.

[¶ 4.] On August 26, 1993, Clifford Lantz (Lantz), an adjoining landowner to the proposed landfill and resident of Brule County, filed a contested case petition and request for hearing. Shortly after Lantz filed his petition, several joint entities withdrew as members of Landfill; specifically, City of Mitchell, Davison County, Hutchinson County and Hanson County withdrew their association with Landfill due to concern that the landfill would not open in compliance with the federal deadline and the decision by the City of Mitchell to keep its landfill open.

[¶ 5.] A hearing on the contested case petition was scheduled for October 20, 1993, before the Board of Minerals and Environment (BME), but was continued until January 19, 1994. BME issued its findings of fact and conclusions of law on February 16, 1994, and concluded that Landfill's permit complied with South Dakota's regulations, but Landfill had failed to obtain county approval of the facility within six months prior to BME's approval pursuant to SDCL 34A–6–103.[3] BME further concluded that the issuance of Landfill's permit was conditioned on Landfill obtaining county reapproval and compli-

ance with DENR's groundwater monitoring requirements.

[¶ 6.] Prior to the BME hearing, a change in membership occurred on County's Commission and a majority of members now opposed the creation of the landfill. On May 3, 1994, the Brule County Commission held a meeting and denied Landfill's request for reapproval of the landfill site. Landfill appealed this decision to the circuit court which determined that the denial of Landfill's reapproval was "arbitrary and capricious." In *Tri County I*, on appeal before this Court, we affirmed the circuit court's determination that County's denial of Landfill's permit reapproval was "arbitrary and capricious" and ordered County to reissue permit approval to Landfill. The landfill eventually opened on November 4, 1996.

[¶ 7.] On June 20, 1994, Landfill brought suit against County for damages under 42 U.S.C. § 1983. County thereafter moved to dismiss the action under SDCL 15–6–12 or in the alternative, a motion for summary judgment. Landfill made a motion for partial summary judgment on the issue of liability under 42 U.S.C. § 1983. Both of County's motions were denied. The trial court, however, granted Landfill's motion based upon this Court's prior determination in *Tri County I* that County's denial of Landfill's permit reapproval was "arbitrary and capricious." Thereafter, the case continued solely on the damages issue. The trial court awarded Landfill

---

**2.** Landfill "was formed in 1992 as a nonprofit corporation to develop, construct, and maintain a regional landfill in Brule County ." *See Tri County I*, 535 N.W.2d at 761. Landfill's members included area counties and municipal governments. County was originally a member of Landfill's association.

**3.** At the time this case arose, SDCL 34A–6–103 provided,

> Any application to the [BME] for a permit for a facility for the transportation, storage or disposal of solid waste or medical waste pursuant to this chapter shall include a resolution by the governing body of the

county in which the facility is to be located approving the proposed facility. Approval by the county within no more than six months before the issuance of the permit by the [BME] shall be considered as a condition for the issuance of the permit.

*See Tri County I*, 535 N.W.2d at 762 n. 3. The statute was amended in 1996. Among the many changes to the statute, SDCL 34A–6–103 now provides that county approval must be acquired within *twenty-four months*, rather than *six* months as was the applicable time period in this case. *See* SDCL 34A–6–103 (1999); SL 1996, ch. 220, § 1.

$628,428.03 in damages, prejudgment interest, attorney's fees and costs.

[¶ 8.] County appeals, raising the following issues:

1. Whether Landfill established a violation of constitutional rights entitling it to summary judgment on liability under 42 U.S.C. § 1983.

2. Whether the trial court erred in awarding Landfill $193,517.04 in damages plus prejudgment interest.

3. Whether the trial court erred in awarding Landfill $359,457.96 in attorney fees.

4. Whether the trial court erred in granting Landfill costs associated with prior litigation.

5. Whether the trial court erred in denying County's motion for jury trial and motion to amend its answer to add a counterclaim for tipping fees not paid by Landfill.

Landfill filed a notice of review, raising the following additional issues:

6. Is SDCL 34A–6–103 unconstitutional.

7. Whether the trial court erred in failing to take judicial notice of the 1995 trial transcript and exhibits.

8. Whether the trial court erred in allowing a challenge to the attorney fees and costs.

9. Whether County's commissioners acted in an administrative capacity when they refused to reapprove the landfill.

10. Whether the trial court erred in not awarding Landfill additional damages for pre-opening administrative costs which were incurred after County had refused to reapprove the landfill.

11. Whether the trial court erred in declaring numerous exhibits irrelevant.

## STANDARD OF REVIEW

[¶ 9.] This case involves the granting of a summary judgment motion against County on the liability aspect of Landfill's § 1983 claim. We have often stated that "[s]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.'" *Horne v. Crozier*, 1997 SD 65, ¶ 5, 565 N.W.2d 50, 52 (citing SDCL 15–6–56(c); *Ford v. Moore*, 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852). Further, "[i]f no issues of material fact exist, and legal questions have been correctly decided, we will affirm." *Id.* (citing *City of Lennox v. Mitek Indus., Inc.*, 519 N.W.2d 330, 332 (S.D.1994); *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987)).

## DECISION

[¶ 10.] **1. Whether Landfill established a violation of constitutional rights entitling it to summary judgment on liability under 42 U.S.C. § 1983.**

[¶ 11.] Under a 42 U.S.C. § 1983 cause of action, a party may recover damages for the "'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States caused by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" *See Michigan Envtl. Resources Assocs., Inc. v. County of Macomb*, 669 F.Supp. 158, 159 (E.D.Mich.1987) (quotation omitted). In a § 1983 action, plaintiff must prove two elements. *Id.* First, a plaintiff must prove "that the defendant acted under color of state law." *Id.* Second, the plaintiff must prove that "the defendant deprived the plaintiff of a federal right, either statutory or constitutional." *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). The parties do not dispute that County's conduct was under "color of state law"; therefore, the first element of a § 1983 cause of

action is clearly satisfied. As such, the crux of our review focuses on whether Landfill was deprived of any "statutory or constitutional right."

[¶ 12.] Landfill originally alleged in its complaint in this case that "revocation by [County] was without prior notice to the [Landfill] and was arbitrary, capricious, willful, malicious, and an unconstitutional taking without just compensation, due process and denied the [Landfill] equal protection under both the South Dakota and United States Constitutions and is actionable under [42] U.S.C. 1983 and 1985." The trial court granted summary judgment solely on the grounds that County violated Landfill's due process rights.[4]

*Due Process*

[¶ 13.] There are two types of due process which are protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See Macomb,* 669 F.Supp. at 159–60. The first type is procedural due process which provides "'certain substantial rights—life, liberty and property—cannot be deprived except pursuant to constitutionally adequate procedures.'" *Id.* (quoting *Loudermill v. Cleveland Bd. of Educ.,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503 (1985)). Procedural due process "is flexible and requires only such procedural protections as the particular

situation demands." *See Knowles v. United States,* 1996 SD 10, ¶ 79, 544 N.W.2d 183, 201 (citing *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976); *Flockhart v. Wyant,* 467 N.W.2d 473, 476 (S.D.1991)).

[¶ 14.] The second type of due process is substantive due process which provides that "'certain types of governmental acts [violate] the Due Process Clause regardless of the procedures used to implement them.'" *Id.* at 159–60 (quoting *Nishiyama v. Dickson County Tennessee,* 814 F.2d 277, 281 (6th Cir.1987)). It is well settled that the doctrine of substantive due process,

"*does not* protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.'"

*PFZ Properties, Inc. v. Rodriguez,* 928 F.2d 28, 31–32 (1stCir.1991) (quoting *Committee of U.S. Citizens in Nicaragua v. Reagan,* 859 F.2d 929, 943 (D.C.Cir.1988) (citations omitted)) (emphasis added). Throughout the history of the doctrine of

4. When looking at the record on the granting of the partial summary judgment on the issue of liability, the state of the record is quite concerning. A review of the trial transcripts reveals that County had several different attorneys during this case's tour through our judicial system. At the beginning of the trial on damages, the latest attorney, Steve Johnson, argued that the trial court's granting of summary judgment on the issue of liability was erroneous and noted that "when the summary judgment was made, prior counsel for the purpose of Brule County only sent a letter to the Court not even a brief." Based on the record, what was actually provided to the trial court to support its decision is unknown. Further, the trial court's memorandum notes that in *Tri County I,* we affirmed the original trial court's conclusion that "the action of [County] in refusing to pass a reso-

lution reapproving [Landfill's] proposed facility was arbitrary and capricious." Based upon this prior opinion, the trial court concluded that liability under § 1983 existed because "[t]hose actions are the same actions that form the basis for the current cause of action and appear controlling." The trial court's memorandum merely held that there was liability under § 1983 and no further discussion was conducted by the trial court. Based upon the arguments and authority submitted in support and resistance of the summary judgment and this holding, it makes the task of appellate review difficult. The trial court memorandum also fails to express whether the due process violation was procedural or substantive. Landfill argues both, but does not specify where there was a procedural omission and the main thrust of their argument is on substantive due process.

substantive due process, the United States Supreme Court " 'has always been reluctant to expand the concept ... because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.' " *See Clark v. City of Hermosa Beach,* 48 Cal.App.4th 1152, 56 Cal. Rptr.2d 223, 242 (1996) (quoting *Albright v. Oliver,* 510 U.S. 266, 271–272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114, 122 (1994)). In recent years, however, courts have begun to " 'restrict[ ] the reach of the protections of substantive due process primarily to liberties "deeply rooted in this Nation's history and tradition." ' " *Id.* at 243 (quoting *Armendariz v. Penman,* 75 F.3d 1311, 1318–19 (9th Cir.1996) (citations omitted)). These protections under the substantive due process doctrine " 'have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.' " *Id.* at 242 (quoting *Albright,* 510 U.S. at 271–72, 114 S.Ct. at 812, 127 L.Ed.2d at 122).

[¶ 15.] The reluctance by many courts to expand the doctrine of substantive due process under a 42 U.S.C. § 1983 action has been grounded on the principle that " 'the violation of a state statute *does not automatically* give rise to a violation of rights secured by the Constitution.' " *See Creative Env'ts, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.1982) *cert. denied* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) (quotations omitted) (emphasis added). Despite this principle, we are presently faced with the trial court's determination that County's "arbitrary and capricious" violation of state law *automatically* amounted to a violation of federal law under 42 U.S.C. § 1983; therefore, the trial court allowed the case to proceed solely on the issue of damages. On this appeal, we must determine whether County's "arbitrary and capricious" denial of a permit under state law automatically constitutes a violation of federal law under § 1983.

[¶ 16.] County argues that the trial court erred in holding that our prior "arbi-

trary and capricious" determination established a violation of the substantive due process rights of Landfill. County contends that to prove a § 1983 claim, the proper standard of proof is whether the government action complained of must be shown to be "truly irrational", that is, "something more than arbitrary, capricious, or in violation of state law."

[¶ 17.] A case which discussed and adopted this "truly irrational" standard is *Chesterfield Development Corp. v. City of Chesterfield,* 963 F.2d 1102 (8th Cir.1992). In *Chesterfield,* City initially enacted a comprehensive zoning plan and ordinance which later turned out to be invalid. Before learning of the invalidity, City denied Chesterfield Development's (Corporation) request for re-zoning. 963 F.2d at 1103. Corporation thereafter brought a § 1983 action against City alleging that enforcement of the invalid ordinance violated Corporation's substantive due process rights. *Id.* at 1103–04. The Eighth Circuit Court of Appeals noted that,

the plaintiff must allege something more than that the government decision was arbitrary, capricious, or in violation of state law. Such claims, it asserted, are better addressed to state courts and administrative bodies. Otherwise, every violation of state law could be turned into a federal constitutional tort. The ... substantive-due-process claims should be limited to "truly irrational" governmental actions.... An example would be attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet.

*Id.* at 1104 (quoting *Lemke v. Cass County Nebraska,* 846 F.2d 469, 470–72 (8th Cir. 1987)). The court added,

*Every* appeal by a disappointed developer from an adverse ruling by a local ... planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point

of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983. As has been often stated, "[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution." *Crocker v. Hakes*, 616 F.2d 237, 239 n. 2 (5th Cir.1980).

*Id.* (quoting *Creative*, 680 F.2d at 833) (emphasis in original). Finally, despite finding that the City's enforcement of an invalid zoning ordinance was not "truly irrational," the court noted that "[a] bad-faith violation of state law remains only a violation of state law." *Id.* at 1105.

[¶ 18.] In *Lemke*, another Eighth Circuit case, an action arose over a County Board of Commissioners' denial of a rezoning application to operate a solid waste landfill. 846 F.2d at 470. Applicants submitted an application to Board and Board ultimately approved the use of the site as a landfill. *Id.* After adjoining landowners complained to the Board about the use of the property as a landfill, a second hearing was held and Board refused to rezone the property and denied the application. Applicants brought suit claiming Board's arbitrary and capricious denial of their application constituted a violation of their substantive due process rights. *Id.* at 471. The district court entered summary judgment in favor of the Board and the Eighth Circuit Court of Appeals affirmed. Circuit Judge Arnold noted in his concurring opinion,

> I am not prepared to say, then, that a denial of a zoning application, or similar governmental permission, can never rise to the level of a substantive-due-process claim. Such claims should, however, be limited to the truly irrational for example, a zoning board's decision made by flipping a coin, certainly an efficient method of decisionmaking, but one bearing no relationship whatever to the merits of the pending matter. Such a con-

servative (judicially speaking) reading of substantive due process would not leave the rights of property open to governmental depredation. They would still enjoy the protections of procedural due process, of the Equal Protection Clause, of the Contracts Clause, of the Just Compensation Clause, and of the other provisions of the Bill of Rights (e.g., the First Amendment) that have been held applicable to the States.

> This reading of substantive due process would exclude complaints like the present one-simple rote allegations that the zoning decision is arbitrary and capricious. Such a claim is easily made in every zoning case, and is the stuff of which state administrative law is made. The state courts are open to hear, and do hear, such claims routinely. I see no reason to read the Due Process Clause as a constitutionalized Administrative Procedure Act setting up the federal courts as a forum for the review of every run-of-the-mill land-use dispute.

> . . . . .

> Every appeal by a disappointed developer from an adverse ruling by a local ... planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" and "equal protection" in order to raise a substantial federal question under section 1983. As has been often stated, "[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution."

*Id.* at 472–73 (Arnold, J., concurring) (quotation omitted).

[¶ 19.] The Eighth Circuit has repeatedly applied the "truly irrational" standard to determining substantive due process violations. *See, e.g., Graning v. Sherburne County*, 172 F.3d 611, 617 (8th

Cir.1999) (holding that to determine whether former state employee's substantive due process rights were violated as a result of her termination by County, she must show that the government action was "truly irrational"); *Bituminous Materials, Inc. v. Rice County, Minnesota,* 126 F.3d 1068, 1070 (8th Cir.1997) (noting that for a road paving contractor to establish that County's placement of restrictions on the issuance of a use permit was a violation of BMI's substantive due process rights, they must establish that County's actions were "truly irrational"); *Anderson v. Douglas County,* 4 F.3d 574, 577 (8th Cir.1993) (stating that where landowner brought suit against County for violation of his substantive due process rights, landowner must establish that the County's actions were "truly irrational"). County also draws our attention to two prior South Dakota district court decisions which have also utilized the "truly irrational" standard. *See Thompson v. Ellenbecker,* 935 F.Supp. 1037, 1040 (D.S.D.1995) (holding that where a child support obligor brought an action for violation of his due process rights based upon a South Dakota statute restricting the issuance and renewal of his driver's license for failure to pay child support, obligor must establish that government action was "truly irrational") and *Achtien v. City of Deadwood,* 814 F.Supp. 808, 815 (D.S.D.1993) (concluding that in a § 1983 action by developers against City for denial of building permits, developer "must show that the city acted in a truly irrational, truly egregious manner").

[¶ 20.] The finding of liability by the trial court solely on *Tri County I's* "arbitrary and capricious" finding was wrong. As in *Chesterfield,* a "bad-faith violation of state law remains only a violation of state law" and should " *'not automatically give rise to a violation of rights secured by the Constitution.' " See Chesterfield,* 963 F.2d at 1104, 1105 (quotation omitted) (emphasis added). To allow this liability determination to stand would elevate "every violation of state law ... into a federal constitutional tort." *See id.* at 1104 (citing *Lemke,* 846 F.2d at 472). Therefore, this matter has to be remanded back to the trial court for a factual determination of whether "truly irrational" conduct existed to support a claim under § 1983.

### *Property Interest*

[¶ 21.] Should the trial court determine that the facts support a § 1983 claim, there still remains a question of whether a protected property interest exists to support Landfill's § 1983 claim. In light of the fact that the trial court made no analysis or discussion as to whether a property right existed or whether such right was violated by County, we will briefly address this issue to assist the court and counsel on remand.

[¶ 22.] The seminal case on whether a property owner has a constitutionally protected property interest is *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth,* the United States Supreme Court stated that:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

[¶ 23.] County's position is that Landfill had nothing more than a "subjective expectancy" in the creation of a landfill and this is not a "legitimate claim to entitlement" which is required for a constitutionally protected property interest. *See Batra v. Board of Regents,* 79 F.3d 717, 720 (8thCir.1996) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561). County cites our prior decision of *SDDS, Inc. v. State of South Dakota,* 1997 SD

114, 569 N.W.2d 289, in support of its argument.[5]

[¶ 24.] In the present case, unlike *SDDS*, Landfill had completed "all applicable county regulations and ordinances," had already been granted permit approval, and was in the process of requesting reapproval. *See Tri County I*, 535 N.W.2d at 765. The *SDDS* case is further distinguishable because the action in *SDDS* arose out of the enactment of a referendum by the state of South Dakota; however, in this case, the court was only faced with the denial of the reissuance of the permit. In light of these facts, reliance on *SDDS* is misplaced.

5. In *SDDS*, South Dakota Disposal Systems (SDDS) brought an inverse condemnation suit against the State of South Dakota based upon an initiative passed by the State which required waste facilities with yearly capacities over 200,000 tons to obtain legislative approval. The initiative had passed while SDDS was petitioning for a five year renewal permit to dispose of 7.75 million tons of municipal solid waste. The *SDDS* case had made many voyages through both the state and federal judicial systems for nearly a decade. In its last voyage, we noted that the Eighth Circuit had previously held that the State was barred from arguing SDDS had no legitimate entitlement to a permit and no property right. County cites us to the following dicta from *SDDS* in which this Court discussed SDDS' property rights:

Although we cannot reach the merits, our analysis of our own case law may have produced a different result. It is a clear principal of takings jurisprudence that, to be compensated, one must be deprived of a portion of the bundle of rights in the property that existed when one obtained title to the property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1027, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798, 820 (1992)....

Simply buying the land gave SDDS no right to site Lonetree. It had to successfully complete our permitting process. [citation omitted.]

SDDS never finally and successfully completed the permitting process required by our comprehensive regulations....

Along with the failure of the regulation process, SDDS was prevented from asserting that it had, as a portion of its "bundle of

[¶ 25.] Landfill argues that it "had a fundamental property right to open a landfill." Landfill also claims that "[a] person's right to use his or her land for any legitimate purpose is constitutionally granted" and that a person has the constitutional right to "use and improve his property as he may deem proper, consistent with law." The determination of Landfill's arguments is extremely difficult because they cite a plethora of cases and delve into various topics ranging from nuisance law to the requirements of a valid zoning ordinance, very little of which is applicable or helpful to the present case. Landfill also argues that it had a property

rights" existing at the time of purchase, a right to operate the [municipal solid waste] facility because of South Dakota's unique voter involvement and the ever-present possibility of direct citizen intervention, through initiatives and referenda, in controversial topics affecting the welfare of the State. In addition to the various permitting hurdles and judicial review that needed to be undertaken, SDDS was very aware of the strong public opposition to the facility....

*SDDS*, 1997 SD 114, ¶ 15 n. 9, 569 N.W.2d at 293.

County submits that based upon our dicta in *SDDS*, Landfill did not have a constitutionally "protected property interest" because they had not yet complied with all of South Dakota's hydrogeological requirements; specifically, the obtaining of county approval to site a landfill. Finally, County contends that "[s]imply purchasing the land and obtaining a building permit did not give [Landfill] a constitutional right to build a landfill," they must complete the permitting process required by South Dakota's comprehensive regulations. We disagree that our dicta in *SDDS* applies in this case. In *SDDS*, the permit was void from the beginning; therefore, "SDDS never finally and successfully completed the permitting process required by our comprehensive regulations." *See SDDS*, 1997 SD 114, ¶ 15 n. 9, 569 N.W.2d at 293.

right because "[o]ne has a vested property right once a building permit or special exception has been issued." Landfill claims that due to the prior approval from County, a property right attached and County could not reject Landfill's reapproval.

[¶ 26.] In oral arguments, Landfill contended that this theory was supported by *Commission on Pollution Control & Ecology v. Worth James,* 264 Ark. 144, 568 S.W.2d 27 (1978), where a landowner has a fundamental right to use his property. In *Worth James,* the Commission on Pollution Control and Ecology denied an application for a permit to construct and operate a sanitary landfill. *Id.* The circuit court reversed the Commission's decision and directed Commission to issue the permit. *Id.* at 28. On appeal, Commission claimed that the "proposed site was unsuitable" for a landfill. *Id.* The Arkansas Supreme Court disagreed with Commission's argument and held that a permit applicant need not demonstrate need for the landfill site in order to obtain a permit. *Id.* at 29. While the court did state that a landowner has a "fundamental right to engage in a lawful business," this right was conditioned on the landowner's conforming "to whatever regulations may be in existence in the public's interest." *Id.* Reliance on *Worth James* is misplaced because it does not deal with a § 1983 action, nor does it deal with whether a constitutionally protected property interest existed.

[¶ 27.] A number of cases have discussed protected property interests. For example, in *Bituminous Materials,* the court was faced with County's placement of restrictions on the issuance of a "temporary equipment placement and operation use permit" to *Bituminous Materials, Inc. (BMI).* 126 F.3d at 1069. BMI claimed that the restrictions on BMI's permit request constituted a violation of their substantive due process rights. The court noted that for BMI to prevail on its substantive due process claim, BMI "must first establish [that] 'a protected property

interest to which the Fourteenth Amendment's due process protection applies.'" *Id.* at 1070 (citations omitted). In determining that BMI did not have a property interest, the court concluded:

A protected property interest, which is a question of state law, is " 'a legitimate claim to entitlement' . . . as opposed to a mere subjective expectancy." A claim to entitlement arises, for these purposes, when a statute or regulation places substantial limits on the government's exercise of its licensing discretion. Thus, *the holder of a land use permit has a property interest if a state law or regulation limits the issuing authority's discretion to restrict or revoke the permit by requiring that the permit issue upon compliance with terms and conditions prescribed by statute or ordinance.* "[P]rocedures alone [do not] create a substantive property right."

*Id.* (citations omitted) (alterations in original) (emphasis added). *See also Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375 (2nd Cir.1995) (holding that a plaintiff has a protected property interest if a "clear entitlement" to the permit exists "and, in turn, a constitutionally protected property interest, exists only when 'the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured' "); *DeBlasio v. Zoning Bd. of Adjustment for the Township of West Amwell,* 53 F.3d 592 (3d Cir.1995) (concluding that "whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks all discretion to deny issuance of the permit or approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest").

[¶ 28.] When Landfill sought reapproval, the make-up of the County Commission had changed through the election process. It is obvious that the majority of the newly elected members were opposed to this facility. *See Tri County I,* 535

N.W.2d at 764. Prior decisions from an elected official's predecessor in no way binds the elected official currently occupying the elected position. In *Figuly v. City of Douglas,* 853 F.Supp. 381, 384 (1994), the court noted:

> One of the most important characteristics of our democratic form of government is the authority of our elected officials to make changes mandated by the electorate. The ability of incoming officials to change policies, procedures, and even key personnel of their predecessors, allows the incoming officials to implement their own policies, those policies desired by the majority of the public who elected them.

The prior approval from the current County's predecessor does not bind the County to automatically approve Landfill's proposal. However, what discretion County had in this case is a factual issue yet to be determined.

[¶ 29.] In *Tri County I,* our holding amounts to a finding of violation of South Dakota law. *Tri County I* does not stand for the fact that a violation of state law amounts to a federal tort claim. More must be established to show that a protected property interest exists, namely, "a lack of discretion on the part of [County] to deny [the permit] issuance."[6] *See Villager Pond,* 56 F.3d at 379. On remand, the trial court has to determine whether Landfill had a clear entitlement to the permit so that there was no discretion left with

County. In other words, it is not whether the denial was "arbitrary or capricious," but rather, whether County had no discretion to deny this second application.

**[¶ 30.] 2. Whether the trial court erred in awarding Landfill $193,517.04 in damages plus prejudgment interest.**

[¶ 31.] Based upon or reversal on issue one, we need not discuss this issue.

**[¶ 32.] 3. Whether the trial court erred in awarding Landfill $359,457.96 in attorney fees.**

[¶ 33.] Despite our reversal of issue one, we must address this issue due to the likelihood that this issue may arise again on remand.

[¶ 34.] Under a § 1983 cause of action, the prevailing party may recover attorney fees under 42 U.S.C. § 1988(b). This statute provides, "[i]n any action or proceeding to enforce a provision of sections . . . 1983, . . . the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs. . . ." *See* 42 U.S.C. § 1988(b). "A trial court's decision whether to award fees under § 1988 and, if so, the amount of such fees will be reversed only for abuse of discretion." *See Moore v. City of Park Hills,* 945 S.W.2d 1, 2 (citing *Brewer v. Trimble,* 926 S.W.2d 686, 688 (Mo.App. S.D.1996)).

**6.** Our decision comports to the decisions from other courts which have "repeatedly held . . . that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process." *See PFZ,* 928 F.2d at 31 (citing *Chongris v. Board of Appeals of Town of Andover,* 811 F.2d 36, 42–43 (1st Cir.1987) *cert. denied* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987); *Chiplin Enterprises v. City of Lebanon,* 712 F.2d 1524, 1528 (1st Cir.1983); *Creative,* 680 F.2d at 829–30). In *Chiplin,* for example, a developer brought a § 1983 action against the City of Lebanon, New Hampshire, its building inspector and the members of its planning board. 712 F.2d at 1525. The First Circuit Court of Appeals emphasized that

" 'even the outright violation of state law by local officials' in denying a license does not automatically raise a federal claim." *Id.* at 1528 (quotation omitted). Further, the court held that" ' [P]roperty is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes.' " *Id.* at 1527 (quotation omitted). Finally, "[a] mere bad faith refusal to follow state law in such local administrative matters simply does not amount to a deprivation of due process where the state courts are available to correct the error." *Id.* at 1528.

 [¶ 35.] In addressing attorney fee requests under § 1988, the court in *Lunday v. City of Albany,* 42 F.3d 131, 133 (2nd Cir.1994) (citations omitted), noted,

> In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court instructed that, in reviewing fee applications under [§ ] 1988, the ... court should exclude hours that were not "reasonably expended." Counsel for the prevailing party must exercise "billing judgment"; that is, he must act as he would under the ethical and market restraints that constrain a private sector attorney's behavior in billing his own clients.

Under this rationale, what is not billable to the client should not be billable to the opposing party.[7]

 [¶ 36.] In the present case, Landfill's attorney requested compensation for 3,103.8 hours, totaling $449,322.45. In reviewing Landfill's attorney's 200 pages of submitted billing statements, the trial court determined that the records were "vague and insufficient because they lack descriptions of the nature of the work being done, and are lumped in a manner which makes the task of making a conscientious and detailed inquiry into the validity of the representations almost impossible." As a result, the court applied a twenty percent reduction on the requested fee amount and award on $359,457.96 in attorney fees to Landfill.

 [¶ 37.] In reviewing this record, we agree with the trial court that Landfill's attorney records were wholly inadequate and vague. It is well settled that in seeking attorney fees under § 1988, " 'the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' " *See Jan R. Smith Constr. Co. v. Dekalb County,* 18 F.Supp.2d 1365, 1373–74 (1998) (quotation omitted). Landfill's attorney bears the burden of establishing the hours and work reasonably expended on the § 1983 action. Clearly, Landfill has failed to meet this burden. Therefore, on remand, if this issue once again comes before the trial court, it would be incumbent on the applicant for attorney fees (Landfill's attorney), to submit for the court's consideration adequate billing records to support the claim for reasonable attorney fees. When such records are provided, only then can a meaningful review for reasonableness be made.

---

7. In its attorney fee request, Landfill sought to recover "approximately 200 hours [from] reading background material on this particular area of law in addition to about 600 hours of specific research in this case." The trial court concluded that "[n]ormally, reading such background material is considered office overhead." *See Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1253 (10th Cir.1998). However, the trial court never deducted these hours from the total before making its twenty percent reduction. A common premise exists that " '[h]ours spent reading background cases or familiarizing oneselves with the general area of law should be absorbed in the firm's overhead[.]' " *See Barvick v. Cisneros,* 1997 WL 417994, *7 (D.Kan.) (quoting *Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir.1983)). *See also Jayhawk Investments v. Jet USA Airlines, Inc.,* 1999 WL 974027, *3 (D.Kan.) (citing that time spent on research should be absorbed into the firm's overhead); *Case,* 157 F.3d at 1253 (noting that background research of cases is part of the firm's overhead); *Cunico v. Pueblo Sch. Dist. No. 60,* 705 F.Supp. 1466, 1467 (D.Colo.1988) (noting that time spent reading background cases which is designed to familiarize the attorney with an area of law would be absorbed into the firm's general overhead). Further, "[w]hen research is 'devoted primarily to [the] general education' of counsel, the court must make appropriate reductions." *See Barvick,* 1997 WL 417994, *7 (quoting *Jones v. Credit Bureau of Greater Garden City, Inc.,* 1989 WL 134945, *3 (D.Kan. 1989)). What is not billable to the client should not be billable to the opposing party. *See Lunday,* 42 F.3d at 133. While we understand the amount of time that trial preparation can consume, neither the client nor the adversary should be liable for the educating of the attorney. Legal research has generally been included in the overhead of the firm and therefore, the opposing party should not be held liable for that amount. The trial court should make an appropriate deduction for the legal research conducted by Landfill's attorney.

[¶ 38.] We have reviewed the remaining issues and find them to be without merit.

[¶ 39.] We reverse and remand this action back to the trial court for a factual determination of whether "truly irrational" conduct existed to support a claim under § 1983. Further, if the trial court should determine that facts exist to support a § 1983 claim, the trial court should then address the question of whether a constitutionally protected property interest in the permit exists to support a § 1983 claim. Finally, the trial court is further instructed to utilize our decision on attorney fees to assist the court should that issue arise again on remand. We affirm the trial court's decision on the remaining issues.

[¶ 40.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 41.] SABERS, Justice, concurs specially in part and dissents in part.

SABERS, Justice (concurring specially in part and dissenting in part).

[¶ 42.] 1. On Issue 1, I would reverse on liability and remand for trial.

[¶ 43.] The trial court incorrectly concluded that our holding in *Tri County I* was conclusive on the question of liability for a § 1983 claim. While there may exist an overlap in the evidence offered to satisfy the "truly irrational" standard, our holding in *Tri County I,* that the County acted in an "arbitrary and capricious" manner, does not automatically satisfy this burden. *See Chesterfield,* 963 F.2d at 1104. This issue needs to be determined by the trial court on remand as the right to a jury trial has been waived.

[¶ 44.] On remand, the trial court has the onerous burden of traversing the path the majority opinion has laid before it. The trial court must be wary because this is not a case of "simple rote allegations that the zoning decision is arbitrary and capricious." *Lemke,* 846 F.2d at 473 (Arnold, J., concurring). The facts underlying our holding in *Tri County I* must rise to the level of the "truly irrational" standard and not merely an arbitrary and capricious action to create liability for the County in a § 1983 claim. Yet that does not mean our determination in *Tri County I* that the actions of the County were arbitrary and capricious negates the possibility of such a showing. In fact, they substantially support it.

[¶ 45.] A County is bound by the actions of its duly elected commissioners. *See* McQuillin, Municipal Corporations § 26.81.20 (3d ed. 1995) (discussing the validity of subsequent actions by commissioners). Therefore, a subsequent reversal of a prior decision by *newly elected* commissioners is clearly wrong, "arbitrary and capricious." These facts under *Chesterfield* go a long way to "give rise to a violation of rights secured by the Constitution," even if it does not do so "automatically." *See Chesterfield,* 963 F.2d at 1104. Therefore, even if not "automatically" "truly irrational" and subject to summary judgment by the court, it is prima facie evidence for the trial court in this case.

[¶ 46.] Therefore, to show that a protected property interest exists, it is only necessary for Tri County Landfill to show "a lack of discretion on the part [of Brule County to deny the issuance of the permit]." *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d at 379. The majority's statement that "[p]rior decisions from an elected official's successor in no way binds the elected official currently occupying the elected position" is wrong. While it is beyond dispute that incoming officials can change "policies, procedures, and even key personnel of their predecessors ... and implement their own policies" they cannot ignore a constitutionally protected property interest if it is found to exist. On remand, this is part and parcel of the factual questions to be determined by the court.

[¶ 47.] Therefore, I concur in the result but not the language of the remand for retrial of Issue 1.

[¶ 48.] 2. I would reverse Issue 2 on damages based on our determination of Issue 1, require the vacation of the Judgment and remand for retrial.

[¶ 49.] 3. I would reverse Issue 3 on attorney's fees based on our determination of Issue 1 and remand for retrial.

[¶ 50.] The discretionary reasonable attorney's fees to be awarded as part of the costs may include background reading material, if included as part of the attorney's fee agreement with the client, Landfill. "It is settled law that attorney fees are allowed in actions ... when specifically provided by statute or agreement of the parties." *In re Rich*, 520 N.W.2d 63, 69 (S.D.1994); *Meisel v. Piggly Wiggly Corp.*, 418 N.W.2d 321, 325 (S.D.1988); *Lowe v. Steele Constr. Co.*, 368 N.W.2d 610, 614 (S.D.1985).

[¶ 51.] The burden of establishing the fee agreement and the billable time and expense thereunder is upon Landfill, (not Landfill's attorney as attorney is not a party to the action). "[A] party filing a motion for an award of attorney's fees bears the burden of proving by a preponderance of evidence its entitlement to such an award." *Hartman v. Wood*, 436 N.W.2d 854, 857 (S.D.1989).

[¶ 52.] 4. I would reverse Issue 4 on prior litigation costs based on our determination of Issue 1, require the vacation of the Judgment, and remand for retrial.

[¶ 53.] 5. I would affirm the first part of Issue 5 on the right to jury trial because it was waived by County and would not reach the second part of Issue 5 on adding a counterclaim as that issue can best be decided on remand.

[¶ 54.] 6. I would not reach Issue 6 on the constitutionality of SDCL 34A–6–103 as it can best be dealt with on remand.

[¶ 55.] 7. I would not reach Issue 7 concerning judicial notice as it would also be best dealt with on remand.

[¶ 56.] 8. I would affirm Issue 8 on allowing the challenge to attorney fees and costs.

[¶ 57.] 9. I would reverse Issue 9 on administrative capacity of County on the permit reapproval, based on our determination of Issue 1 and remand for retrial.

[¶ 58.] 10. I would not reach Issue 10 on additional damages because it can best be resolved on remand.

[¶ 59.] 11. I would not reach Issue 11 on the admission of numerous exhibits as it is also best dealt with on remand.